IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRENDA L. ST. JEAN,<br><br>               Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>               Defendant. | HONORABLE JEROME B. SIMANDLE<br><br><br>Civil Action<br>No. 13-2163 (JBS)<br><br>**OPINION** |

APPEARANCES:

Richard Lowell Frankel, Esq.
BROSS & FRANKEL, PA
102 Browning Lane, Bldg. C-1
Cherry Hill, NJ 08003
    Attorney for Plaintiff

Paul J. Fishman
UNITED STATES ATTORNEY
    By: David L. Brown
        Special Assistant U.S. Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278
    Attorney for Defendant


**SIMANDLE, Chief Judge:**

**I. INTRODUCTION**

    Plaintiff Brenda L. St. Jean brings this action pursuant to

42 U.S.C. § 405(g), seeking review of a partially favorable

final decision issued by the Commissioner of the Social Security

Administration. The Commissioner granted Plaintiff's application

for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et seq. ("the Act"), for the period of September 23, 2009, through September 19, 2011, but ruled that Plaintiff's disability ended on September 20, 2011, due to medical improvement. Plaintiff argues that the Administrative Law Judge ("ALJ") lacked substantial evidence to support his conclusion that her medical condition improved as of September 20, 2011, and she seeks remand to the ALJ for further consideration. Relatedly, Plaintiff argues that the ALJ erred in determining that her statements about her medical condition as of September 20, 2011, lacked credibility.

Because the Court agrees with Plaintiff that the ALJ lacked substantial evidence to find medical improvement and conclude that Plaintiff was not disabled as of September 20, 2011, the Court will remand the matter to the ALJ for further consideration.

## II. Background

### A. Procedural history

Plaintiff protectively filed an application for social security disability benefits and supplemental security income benefits on September 23, 2009, alleging an onset of disability on June 15, 2005. (Pl. Br. at 1.) The claim was denied, as was a request for reconsideration. (Id.) The ALJ Frederick Timm held a hearing in this matter on October 24, 2011, and issued a

partially favorable decision granting Title XVI benefits for the period from September 23, 2009, to September 19, 2011, and dismissing the claim for Title II disability benefits. (R. at 14-15.) The Appeals Council denied Plaintiff's request for review. (R. at 1.) Plaintiff filed the present action.

### B. Medical history

The Court will recite only those portions of the record that are germane to the present motion. Plaintiff, who was 44 years old when she applied for benefits, suffers from multiple medical conditions, including Hepatitis C, discogenic and degenerative disorders of the back, affective mood disorders, anxiety disorders, and arthritis. (Pl. Br. at 2.) Beginning in 2005, Plaintiff sought repeated treatment from doctors for increasing pain in her left hip, leg, foot, groin, and buttock. (Id. at 2-4.) At first, doctors had difficulty identifying the cause of Plaintiff's pain, ordering multiple tests, prescribing pain medication and administering injections to ease Plaintiff's symptoms. (Id. at 2-6.) Over time, doctors identified a bulging disc in her spine and diagnosed her with chronic sciatica, and tinkered with her pain medications and therapy regimens. (Id. at 4-8.)

In November 2006, an orthopedic surgeon detected an elevated rheumatoid factor in Plaintiff's blood and referred her to a rheumatologist. (Id. at 8.) The rheumatologist examined

Plaintiff, who had a strong family history of rheumatoid arthritis, but was not convinced of a rheumatoid arthritis diagnosis, noting that patients with Hepatitis C sometimes have elevated rheumatoid factors. (R. at 462-63.) Plaintiff sought opinions from other rheumatologists, who likewise did not affirmatively diagnose Plaintiff with rheumatoid arthritis. (Pl. Br. at 9.) Between 2007 and 2009, Plaintiff struggled at times with substance abuse, mental disorders and seizures, and she continued to complain of body pain and fatigue. (Pl. Br. at 10-12.)

In October 2009, Plaintiff experienced bilateral wrist pain and had x-rays of her hands and wrist. Dr. David Feinstein could not positively diagnose Plaintiff with rheumatoid arthritis but suspected "inflammatory polyarthritis with positive rheumatoid factor" and noted that Plaintiff's successful history with prednisone supports "the possibility of inflammatory arthritis." (R. at 1080.) Plaintiff's symptoms worsened in 2010. (R. at 1105.) Dr. Pamela Traisak examined Plaintiff and observed significant swelling and tenderness in the left hand and wrist, and noted that Plaintiff rated her pain as ten on a scale of ten. (Id.) Dr. Traisak concluded "it is likely that [Plaintiff] has rheumatoid arthritis with chronic hepatitis C infection," noting that such a combination was difficult to treat because

the recommended medications for arthritis should not be used by a patient with Hepatitis C. (Id.)

Dr. Ken Klausman examined Plaintiff on January 10, 2010, and observed reduced strength in Plaintiff's right hand and "markedly decreased" fine hand motor movements in her right hand. (R. at 858.) He observed "decreased sensation to fine touch and pinprick in a glove distribution of the right hand and the left hand has moderately decreased sensation to fine touch and pinprick." (R. at 859.)

Dr. Traisak followed up with Plaintiff in March 2011, and observed continued "severe joint symptoms particularly in her hands, wrists, knees, and hips," and noted that Plaintiff reported "muscle cramping symptoms in her hands and feet . . . ." (R. at 1103.) Plaintiff again reported that "she does get some relief from prednisone," but Plaintiff was concerned about taking the medication chronically. (Id.) Dr. Traisak again declined to diagnose Plaintiff with rheumatoid arthritis, saying she has "diffuse joint pains and fatigue," and observing that Plaintiff's "exam is slightly underwhelming in terms of an inflammatory arthritis. She is tender in the correct areas and she also does have an extensive family history of rheumatoid arthritis." (Id.) Dr. Traisak raised the possibility of Enbrel therapy to treat Plaintiff's joint problems, but recommended Plaintiff see a hepatologist, because a "hepatitis C infection

that is active is also contraindicated with Enbrel use." (R. at 1104.)

Plaintiff began Enbrel treatment in August 2011, and saw Dr. Traisak again on September 19, 2011. Dr. Traisak memorialized the visit in a letter[1] stating that Plaintiff

> carries a diagnosis of inflammatory arthritis consistent with rheumatoid arthritis and also has the diagnosis of Fibromyalgia.[2] Her arthritis does result in flares of joint swelling as well as severe pain that makes it very difficult to perform her routine activities and function normally during her flares.

(R. at 1101.) Dr. Traisak continued: "She recently started Enbrel 50mg weekly injections on 8/1/11 and reports that this medication has helped her arthritis. She notes that no other medications used in the past have helped." (Id.)

Dr. Ronald Gonzalez of Capital Health Institute for Neuroscience examined Plaintiff on September 26, 2011. (R. at 1130.) Plaintiff complained mostly of chronic low back pain, and the majority of Dr. Gonzalez's office consultation note concerns the functionality of her lower body. Dr. Gonzalez observed she was "very stiff and moves very slowly," but she could walk into the examination room, sit and stand without assistance. (Id.)

---

[1] The letter is addressed generically to "Dear Sir or Madam" and concludes: "Please continue approving this medication." (R. at 1101.)

[2] Fibromyalgia is a condition marked by "widespread musculoskeletal pain and tender points," and associated problems, such as fatigue, sleep disturbance, stiffness, depression, anxiety, among others. See 38 C.F.R. § 4.71a.

Dr. Gonzalez reported normal strength in "both arms and legs" and negative results for a "straight leg raising" test and a "FABER test."[3] (Id.) He ordered an MRI of her back. (R. at 1131.)

Plaintiff followed up with Dr. Gonzalez on October 19, 2011. (R. at 1128.) Again, he focused on her lower body, noting her ability to walk and climb on the examination table without assistance. (Id.) He noted normal strength in her legs, but also noted "[f]lexion, rotation and lateral bending of the lumbar spine are decreased producing low back pain" and that she has tightness in both hamstrings. (Id.) He recommended physical therapy, an increase in some medication and would consider spinal injections. (R. at 1129.)

Plaintiff appeared at the ALJ hearing five days later.

**C. ALJ decision**

In a written decision dated January 13, 2012, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 23, 2009, the date she became disabled. (R. at 18.) He found she suffered from severe impairments, including "bulging disc at the L3-L4 level, herniated nucleas pulposus at the L5-S1 level, Hepatitis C, status post knee surgery with

---

[3] A Faber test is a pain provocation test used to identify sacroiliac joint disease. See Ahmad v. Astrue, No. 11-1342, 2012 WL 5463676, at *6 n.25 (M.D. Pa. Nov. 8, 2012); Nicely v. Astrue, No. 10-2412, 2012 WL 1231215, at *7 n.26 (M.D. Pa. Apr. 12, 2012). The name of the test is an acronym drawn from the words flexion, abduction and external rotation. Nicely, 2012 WL 1231215, at *7 n.26.

chondromalacia, arthritis, chronic pain syndrome, bipolar

disorder, and depression with anxiety (20 CFR 416.920(c))."

(Id.) Her combination of impairments did not meet or medically

equal the severity of an impairment listed in the regulations,

but he described her "residual functional capacity" ("RFC"), for

the period from September 23, 2009, to September 19, 2011, as

follows:

> the claimant had the residual functional capacity to
> perform sedentary work as defined in 20 CFR 416.967(a)
> except that she lacked bimanual dexterity, could never
> climb ladder/rope/scaffold, kneel, crawl, or crouch
> but could perform other postural activities
> occasionally and needed to avoid concentrated exposure
> to vibration and hazards; and was further limited to
> unskilled tasks and to goal-oriented rather than
> production-paced tasks, with no significant
> interaction with the general public and no more than
> occasional interaction with supervisors/co-workers.

(R. at 19, 20.) The ALJ concluded that Plaintiff's "medically

determinable impairments could reasonably be expected to produce

the alleged pain and other symptoms, and that the claimant's

statements concerning the intensity, persistence and limiting

effects of these symptoms are generally credible from September

23, 2009 through September 19, 2011." (R. at 22.) He found that

"additional limitations" impeded Plaintiff's ability to perform

all or substantially all of the requirements of sedentary work,

and, after taking testimony from a vocational expert, he

concluded that Plaintiff could perform no work that existed in

significant numbers in the national economy. (R. at 23.) The ALJ

determined that Plaintiff was disabled from September 23, 2009, through September 19, 2011. (Id.)

The ALJ then shifted his focus to the period beginning September 20, 2011. (Id.) The ALJ found that Plaintiff suffered from the same severe impairments, which still did not to meet or medically equal the severity of the impairments listed in the regulations. (Id.) The difference, according to the ALJ, was that "[m]edical improvement occurred as of September 20, 2011, the date the claimant's disability ended (20 CFR 416.994(b)(1)(i))." (R. at 25.) He explained: "The medical evidence indicates that the claimant was prescribed weekly injections of Enbrel (50mg) on August 2011 for her wrist and hands, improving her condition. Consequently, on September 2011, the claimant admitted that the treatment has helped her arthritis (Exhibit 51F)." (Id.) He found that the medical improvement was related to Plaintiff's ability to work, and described her new RFC as follows:

> the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she should never climb ladders/ropes/scaffolds, kneel crawl or crouch; can occasionally climb ramps and stairs, balance and stoop; must avoid concentrated exposure to vibration and hazards; and is further limited to unskilled tasks and to goal-oriented rather than production-paced tasks, and should have no significant interaction with the general public and no more than occasional interaction with supervisors/co-workers.

(Id.)

In other words, the two RFCs differed in only two ways.
First, the initial RFC, for the period through September 19,
2011, included the limitation that Plaintiff "lacked bimanual
dexterity"; the second RFC, for the period beginning September
20, 2011, contained no such limitation. (R. at 20, 25.) Second,
the initial RFC included the observation that Plaintiff "could
perform other postural activities occasionally . . . ."; the
second RFC instead noted that she "can occasionally climb ramps
and stairs, balance and stoop[.]" (Id.)

The ALJ then ruled that Plaintiff's statements about her
symptoms were not credible "to the extent they are inconsistent
with the residual functional capacity assessment . . . ." (Id.)
He found that "objective findings support that the claimant's
alleged impairments beginning September 20, 2011 had only a
slight abnormality with minimal effect on the ability to do
basic work activities." (Id.) He recounted Dr. Gonzalez's
findings, focusing on her ability to walk, sit and stand, her
negative leg tests and "normal strength along both upper and
lower extremities . . . ." (R. at 25-26.) The ALJ gave
"significant weight" to Dr. Gonzalez's determination that
Plaintiff "remained functional" in October 2011, with occasional
back pain, no muscle spasms, no spinal deviations, normal
strength in her lower extremities and mild bulging of her spine.
(R. at 26.) The ALJ added that Plaintiff did not show that she

required additional emergency room treatment after September 19, 2011, and the ALJ himself observed Plaintiff "was able to handle papers without difficulty" during the hearing. (Id.) The ALJ concluded: "The undersigned finds that the claimant has had improvement of her physical impairments and has responded well to prescribed treatment as evidence by the follow-up examinations with her treating physician." (Id.) He stated that "objective findings" show she "retains the ability to comply with the exertional and non-exertional requirements of basic work related tasks." (Id.)

The ALJ again found that Plaintiff was not able to perform the full range of sedentary work, but rather had "additional limitations." (R. at 27.) A vocational expert testified that she would be able to work as a "surveillance system monitor," "addresser," or "assembler/bench," which existed in significant numbers in the national and regional economies. (Id.) The ALJ ruled that Plaintiff was not disabled as of September 20, 2011. (Id.)

## III. Standard of review

Federal statute empowers the Court to review the Commissioner's decision to deny social security benefits. 42 U.S.C. § 405(g). The Court's review is deferential to the Commissioner's decision, and the Commissioner's factual findings are conclusive where they are supported by "substantial

evidence." Id.; see also Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (summarizing the deferential standard of review). Substantial evidence is defined as "more than a mere scintilla," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 400 (1971); see also Hagans, 694 F.3d at 292 (using the language of Richardson, and citing Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)). The Court may not weigh the evidence or substitute its own conclusions for those of the ALJ. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011).

## IV. Discussion

### A. Federal regulations related to medical improvement

Plaintiff's primary argument is that the ALJ lacked substantial evidence to conclude that medical improvement occurred on September 20, 2011.

Federal regulations dictate how the Social Security Administration is to evaluate a continuing disability. See 20 C.F.R. § 416.994(b)(5) (laying out a seven- or eight-step analysis, depending on the circumstances). At step one, the ALJ must determine whether the combination of impairments meets or medically equals the severity of an impairment listed in the regulations. § 416.994(b)(5)(i). If not, at step two, the ALJ must determine whether there has been medical improvement, which

is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision," and "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)." §§ 416.994(b)(5)(ii) & (b)(1)(i). Improvement that "is only temporary will not warrant a finding of medical improvement," and the ALJ "will be careful to consider the longitudinal history of the impairment, including the occurrence of prior remission, and prospects for future worsenings." § 416.994(b)(2)(iv)(D).

At step three, the ALJ must determine if the medical improvement "is related to your ability to do work . . . ; i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination."[4] § 416.994(b)(5)(iii). If the improvement is related to the claimant's ability to work, the ALJ will determine whether the impairments in combination are severe. § 416.994(b)(5)(v) ("Step

_____

[4] The regulations further provide that "[b]asic work activities means the abilities and aptitudes necessary to do most jobs," including "exertional abilities such as walking, standing, pushing, pulling, reaching and carrying, and non-exertional aptitudes such as seeing, hearing, speaking, remembering, using judgment, dealing with changes and dealing with both supervisors and fellow workers." § 416.994(b)(1)(iv). Impairments may limit the functional capacity to do one or more of these basic work activities, depending on the severity. Id.

5"). (If the improvement is not related to the ability to work, "disability will be found to continue." § 416.994(b)(5)(iv) ("Step 4").) At step six, the ALJ will assess the claimant's ability to perform substantial gainful activity, and if the claimant is not able to do relevant past work, at step seven, the ALJ will consider "whether you can do the other work given the residual functional capacity assessment made under paragraph (b)(5)(vi) . . . ." § 416.994(b)(5)(vi) & (vii). If not, "disability continues." § 416.994(b)(5)(vii).

**B. Medical improvement & ability to perform work activities**

Plaintiff argues that the only change in the ALJ's RFC formulation beginning September 20, 2011, was the elimination of any functional limitations related to bimanual dexterity.[5] (Pl. Br. at 25.) According to Plaintiff, the only evidence that the ALJ discussed related to a change in bimanual dexterity was the single line in Dr. Traisak's observation that the Enbrel treatment "has helped her arthritis." (R. at 25, 1101.) The ALJ also observed that Plaintiff "was able to handle papers without difficulty" and Dr. Gonzalez reported "normal strength along both upper and lower extremities." (R. at 26.) Plaintiff contends that this is not substantial evidence to support a finding of sustained medical improvement. (Pl. Br. at 26.)

_____

[5] As the Court previously observed, there was a second change in the RFC, but, as discussed below, the other change is immaterial.

Plaintiff also argues that the ALJ impermissibly relied on his own observations of Plaintiff's handling ability and argues at length that other medical evidence supports a finding of continued disability. (Id. at 27-30.)

In reviewing the ALJ decision, the Court cannot weigh the medical evidence, Chandler, 667 F.3d at 359, and so the argument that other medical evidence compels a finding of continued disability cannot help Plaintiff. However, the Court must consider whether the evidence the ALJ discussed in support of his finding of medical improvement and the second RFC was "substantial." Hagans, 694 F.3d at 292.

Defendant argues that the evidence cited by the ALJ is substantial. (Def. Opp'n at 6.) Defendant asserts that the ALJ highlighted the successful Enbrel treatments, and the ALJ need not show sustained improvement or complete resolution of the limitations to conclude that Plaintiff's impairments have decreased in severity to the point where Plaintiff is no longer disabled. (Id. at 7.) Defendant further argues that ALJ's discussion of medical improvement of Plaintiff's lower extremities need not be directly connected to "a total resolution of any upper extremity impairment" nor "directly connected to a change in the RFC to be relevant. See 20 C.F.R. § 416.994." (Id. at 8-9.) Defendant also responds that the ALJ may rely on his observations of Plaintiff, as long as the

observations are not the sole basis for the ALJ's findings. (Id. at 9.)

The ALJ certainly discussed substantial evidence to support the change in the RFC related to Plaintiff's ability to "occasionally climb ramps and stairs, balance and stoop," based on Dr. Gonzalez's examinations. A reasonable mind might find the evidence about her ability to walk and maneuver, along with normal strength and negative leg tests, adequate to support a finding of medical improvement that is related to Plaintiff's ability to perform basic work functions. Ultimately, however, the improvements to the lower body are not material to a finding that Plaintiff was not disabled after September 20, 2011, because the jobs that the ALJ concluded Plaintiff could perform do not require any climbing, balancing or stooping. See Dictionary of Occupational Titles ("DOT") § 379.367-010, available at 1991 WL 673244 (noting that the job description of a surveillance system monitor does not require climbing, balancing or stooping); id. § 209.587-010, available at 1991 WL 671797 (same for position of "addresser"); id. § 734.687-018, available at 1991 WL 679950 (same for position of "assembler/bench").[6] These jobs do not depend on any

_____

[6] The DOT was created by the Employment and Training Administration and last updated in 1991, and has since been replaced by a new online database, however the ALJ cited

16

functionality of the back or legs that Plaintiff lacked through
September 19, 2011, but gained as of September 20, 2011, as
reflected in her RFCs. In other words, Plaintiff's newfound
ability to climb, balance and stoop cannot be the reason that
Plaintiff suddenly was able to perform those jobs as of
September 20, 2011, because those abilities are not required to
do the work. Therefore, to support a finding that Plaintiff was
capable of working in these positions as of September 20, 2011,
the ALJ must identify some other change in her RFCs, based on
medical improvement, that speaks to her ability to perform these
jobs, and that change, in turn, must be supported by substantial
evidence. The only other change in Plaintiff's two RFCs was the
removal of any bimanual dexterity limitation as of September 20,
2011. Because bimanual dexterity is required by these jobs, if
substantial evidence supports the removal of the dexterity
limitation from Plaintiff's RFC, the ALJ's decision will be
upheld.

The ALJ's primary piece of evidence supporting the
improvement of her arthritis is Dr. Traisak's statement that
Plaintiff reported that the Enbrel "helped her arthritis." (R.
at 1101.) This statement is particularly unhelpful in
illuminating Plaintiff's functional capacity. The statement does

---

specific job descriptions and DOT numbers, so the Court will
consider the materials cited in support of the ALJ's finding.

not quantify the degree to which the medication "helped," nor does it describe Plaintiff's current dexterity. Dr. Traisak does not elaborate with any test results or notes from a physical examination, and she presents the information not as her own conclusion but as Plaintiff's: "She . . . reports that this medication has helped her arthritis." (Id.) This evidence alone is not that which "a reasonable mind might accept as adequate to support" the conclusion that Plaintiff ceased to have any bimanual dexterity limitation as of September 20, 2011. Richardson, 402 U.S. at 400.

The ALJ relied on two other pieces of evidence: Dr. Gonzalez's notation that Plaintiff has normal strength in her upper extremities, and the ALJ's own observation that Plaintiff could handle papers at the hearing. There is no discussion in the ALJ's decision that having normal strength in the upper extremities correlates in any way with dexterity, so the evidence of strength appears unrelated to central issue here. The observation of Plaintiff handling papers is more directly on point, and was properly considered by the ALJ, as it was not the sole basis for the change in Plaintiff's RFC. See Holley v. Colvin, --- F. Supp. 2d ---, No. 12-5357, 2013 WL 5467231, at *12 (D.N.J. Sept. 30, 2013) (stating the ALJ's reliance on his observation is not improper as a matter of law if it was one element of, but not the sole basis for, his credibility

finding). The key inquiry for the Court is whether this evidence, in combination, qualifies as "substantial evidence" in support of the ALJ's findings.

A reasonable mind could not accept these pieces of evidence, in combination, as adequate to support the conclusion that Plaintiff ceased to have any bimanual dexterity limitations as of September 20, 2011. The ALJ has not discussed any objective medical evidence that describes Plaintiff's dexterity as of September 20, 2011. The statements from Plaintiff's physicians on which the ALJ relies are either vague (treatment "helped") or without a noted causal link to Plaintiff's functional capacity (discussion of "normal" strength in upper extremities). Therefore, the ALJ lacked substantial evidence for his RFC determination that Plaintiff had no bimanual dexterity limitations as of September 20, 2011, and this matter will be remanded to the ALJ for further consideration.[7]

---

[7] Plaintiff also argues that the objective medical evidence does not show sustained medical improvement. (Reply at 4.) The concept of sustained medical improvement emanates from the discussion of impairments subject to temporary remission, see § 416.994(b)(2)(iv)(D) ("we will be careful to consider the longitudinal history of the impairment, including the occurrence of prior remission, and prospects for future worsenings"), as well as an example in the regulations illustrating medical improvement. The example describes a claimant who is awarded disability due to rheumatoid arthritis, and while laboratory tests still detect the presence of rheumatoid arthritis, the claimant

## C. Plaintiff's credibility

Plaintiff also argues that the ALJ erred when he determined that Plaintiff lacked credibility as to her symptoms on and after September 20, 2011. (Pl. Br. at 30-31.) Plaintiff argues that "the ALJ did not state what testimony or assertions he was accepting and what specifically he was rejecting," in contravention of Social Security Ruling ("SSR") 96-7p and Third Circuit case law. (Id. at 31.) "It is submitted that it is clear error to find the Plaintiff to be less than fully credible after September 20, 2011, without explicitly considering the very statements the ALJ purports to reject." (Id.)

Here, the ALJ found Plaintiff's statements to be credible for the period through September 19, 2011, because those statements were consistent with the objective medical evidence. The ALJ stated: "the claimant's statements concerning the

---

has responded favorably to therapy so that for the last year your fingers and wrists have not been significantly swollen or painful. Medical improvement has occurred because there has been a decrease in the severity of your impairment as documented by the current symptoms and signs reported by your physician. Although your impairment is subject to temporary remissions and exacerbations, the improvement that has occurred has been sustained long enough to permit a finding of medical improvement.

§ 416.994(b)(1)(i) ("Example 2"). Upon remand, the ALJ may consider whether the documented symptoms and signs reported by Plaintiff's physicians demonstrate sufficiently sustained medical improvement.

intensity, persistence and limiting effects of these symptoms
are not credible beginning September 20, 2011, to the extent
they are inconsistent with the residual functional capacity
assessment for the reasons explained below." (R. at 25.) He then
recited evidence from medical examinations in September and
October 2011. (R. at 25-26.)

The ALJ did not commit clear error in this credibility
determination. SSR 96-7p requires the ALJ to make credibility
determinations grounded in the evidence and in light of the
entire case record. The ALJ cannot simply state that the
"allegations have been considered" or that they are not
credible. SSR 96-7p, 1996 WL 374186 at *2. Additionally, the ALJ
cannot reject the claimant's statements related to pain or other
symptoms simply because they are unsupported by medical
evidence. Id. at *1. Here, however, the ALJ has made the
appropriate considerations. He has considered the entire case
record and the relevant medical evidence, and determined that
some of Plaintiff's statements conflicted with his
interpretation of the objective medical evidence. He describes
the specific medical evidence he credited and stated that he
gave significant weight to the treating physician's
observations. (R. at 26.) While "not expansive, the ALJ's
comments are adequate to withstand" judicial review on this
point. Martin v. Comm'r of Soc. Sec., --- F. App'x ---, No. 13-

2150, 2013 WL 6501335, at *5 (3d Cir. Dec. 12, 2013) (upholding

the ALJ's credibility determination when the ALJ (1) stated the

claimant's testimony was not credible because it did not comport

with the weight of the evidence in the file and (2) described

the contrary evidence).

Plaintiff's citations are not to the contrary. (Pl. Br. at

31); see Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994)

(stating that the Secretary "must consider all the evidence and

give some reason for discounting the evidence she rejects"); Van

Horn v. Schweiker, 717 F.2d 871, 873-74 (3d Cir. 1983) (holding

the ALJ erred when the ALJ failed to state whether a witness was

credible or for ignoring medical evidence contrary to the ALJ's

conclusion); Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 122

(3d Cir. 2000) ("Although allegations of pain and other

subjective symptoms must be consistent with objective medical

evidence, the ALJ must still explain why he is rejecting the

testimony") (citations omitted). Here, the ALJ considered the

evidence of record and stated that he did not find the

Plaintiff's statements to be credible because they conflicted

with objective medical evidence. While the ALJ could have

explained his reasoning in more detail, the Court will not

remand the matter on this ground.

**V. Conclusion**

The Court will vacate in part and remand the ALJ's decision, because his determination of the Plaintiff's RFC on September 20, 2011, and the resulting conclusion that Plaintiff was not disabled as of that date, is unsupported by substantial evidence. An accompanying Order will be entered.


**December 30, 2013**          **s/ Jerome B. Simandle**
Date                             JEROME B. SIMANDLE
                                    Chief U.S. District Judge